Reversed and Remanded and Opinion filed May 3, 2007








Reversed and
Remanded and Opinion filed May
3, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00637-CV

____________

 

LOUIS JOHN GAVREL, Appellant

 

V.

 

JOSÉ E. RODRIGUEZ, M.D. and GRANT
R. MCKEEVER, M.D. P.A., Appellees

 



 

On Appeal from the 11th
District Court

Harris County, Texas

Trial Court Cause No. 02-04330

 



 

O P I N I O N

Appellant, Louis John Gavrel, appeals a medical malpractice
judgment entered in favor of appellees, José Rodriguez and Grant McKeever.  In
six issues, appellant argues that the evidence is factually insufficient to
support the jury=s verdict and that he is entitled to a new
trial due to an incomplete reporter=s record.  We
reverse and remand for a new trial.

I.  Background








On the evening of February 17, 2000, Dr. Grant McKeever
received a phone call from Dr. Ralph Hertz, Mr. Gavrel=s family
physician.  Dr. Hertz asked Dr. McKeever to meet Mr. Gavrel in the emergency
room because Mr. Gavrel was suffering from severe low back pain.  X-rays of Mr.
Gavrel=s back revealed
that titanium cages placed earlier in his back had begun to move.  Because Dr.
McKeever did not regularly treat patients with back cages, he called Dr. José
Rodriguez.  Dr. Rodriguez determined that Mr. Gavrel=s pain and muscle
weakness were caused by movement of the back cages.  Dr. Rodriguez testified
that Mr. Gavrel needed surgical correction of the back cage positions to
prevent a potential severing of the spinal cord.  Dr. Rodriguez noted that Mr.
Gavrel had Aborderline@ high blood
pressure, for which medication had been prescribed.  Pre-operative blood tests
revealed that Mr. Gavrel had elevated blood sugar levels.  Dr. Rodriguez asked
Mr. Gavrel if he were taking diabetes medication.  Mr. Gavrel initially denied
that he had diabetes, but eventually admitted to Asome degree of
diabetes.@  On February 23, 2000, Dr. Rodriguez performed
surgery on Mr. Gavrel=s back.  Dr. McKeever assisted Dr.
Rodriguez, and Dr. David Warrington administered anesthesia.  When Mr. Gavrel
awoke from surgery, it was discovered that he had suffered a stroke.

Mr. Gavrel subsequently sued Drs. Warrington, Rodriguez,
and McKeever for negligence.  Mr. Gavrel alleged that his blood pressure was
not properly monitored during surgery, causing him to suffer a stroke.  He
further alleged that Drs. Rodriguez and McKeever were negligent in proceeding
to surgery without obtaining consultations from internists.  On October 8,
2002, Mr. Gavrel agreed to non-suit Dr. Warrington.  After a jury trial, the
jury found that the negligence, if any, of Drs. Rodriguez and McKeever did not
proximately cause Mr. Gavrel=s injury.

II.  Inaccuracies in the Reporter=s Record

Appellant filed a motion for new trial in this court
pursuant to Texas Rule of Appellate Procedure 34.6(f) based on his allegation
that the substitute court reporter=s certification of
the final volume of the reporter=s record is not
credible and that the trial court=s subsequent
corrections to the record were not authorized by any rule of trial or appellate
procedure.  








The trial in this case lasted three days.  Most of the
testimony was transcribed by the trial court=s regular court
reporter, and that portion of the record was timely filed.  Cynthia
Torres-Miles, a substitute court reporter, transcribed the third and final day
of testimony.  After several extensions of time, Ms. Miles filed the final
volume of the reporter=s record on February 9, 2005.  Upon
review, appellant=s counsel found the volume to be
inaccurate and filed a motion in this court to have the reporter=s record
corrected.  Rule 34.6(e)(3) sets out the procedure to be followed when a party
challenges the accuracy of the reporter=s record after it
has been filed in the appellate court.  See Tex. R. App. P. 34.6(e)(3).  The rule provides:

(e) Inaccuracies in the Reporter=s Record.

(1) Correction of Inaccuracies by Agreement.  The parties may agree to
correct an inaccuracy in the reporter=s record, including an exhibit, without the court reporter=s recertification.

(2) Correction of Inaccuracies by Trial Court.  If the parties cannot
agree on whether or how to correct the reporter=s record so that the text accurately discloses what
occurred in the trial court and the exhibits are accurate, the trial court mustBafter notice and hearingBsettle the dispute.  If the court
finds any inaccuracy, it must order the court reporter to conform the reporter=s record (including text and any
exhibits) to what occurred in the trial court, and to certify and file in the
appellate court.

(3) Correction After Filing in Appellate Court.  If the dispute arises
after the reporter=s record has been filed in the
appellate court, that court may submit the dispute to the trial court for
resolution.  The trial court must then proceed as under subparagraph(e)(2).

 








On February 24, 2005, this court abated the appeal, ordered
the parties to attempt to resolve the dispute, and if no agreement was
possible, referred the dispute to the trial court for resolution.  On March 24,
2005, the court reporter notified this court that she was confident that (1)
her transcription of the record is accurate, and (2) no changes would be made
unless further orders issued.  On April 21, 2005, this court ordered the
parties to attempt to agree on corrections to the record.  On May 20, 2005,
appellant informed the court that although the parties agreed that errors
existed in the final volume of the reporter=s record, they
could not agree to correct the reporter=s record.  Both
parties requested a hearing in the trial court to resolve the dispute.

On June 9, 2005, we ordered the trial court to conduct a
hearing to resolve the dispute over the accuracy of volume 4 of the reporter=s record in
accordance with the procedure set forth in Rule 34.6(e)(2).  A record of a
hearing held in the trial court on September 7, 2005, was filed in this court
on January 11, 2006.  On February 7, 2006, a supplemental clerk=s record
containing the trial court=s order signed October 24, 2005, was filed
in this court.  The trial court=s order itemized twelve corrections to the
February 16, 2004, reporter=s record.  The trial court recited that A[w]ith these
corrections, the transcript of the Court reporter, Cynthia Torres-Miles for
trial in the referenced cause on February 16, 2004, is certified.@  The trial court
did not strictly comply with Rule 34.6(e)(2) in that it did not order the court
reporter to conform the reporter=s record to what
occurred in the trial court; rather it undertook that task itself.  In an order
dated February 16, 2006, this court found good cause to suspend the operation
of the rule under Rule 2, and accepted the trial court=s corrections to
the reporter=s record.  See Tex. R. App. P. 2.  

III. Lost or Destroyed Record

On appeal, appellant contends that he is entitled to a new
trial because even with the trial court=s corrections, a
significant portion of the court reporter=s notes and
records has been lost or destroyed.  In addressing this issue, we apply the
following analysis as prescribed by the Rules of Appellate Procedure:

(f) Reporter=s Record Lost or Destroyed.  An appellant is entitled to a
new trial under the following circumstances:

(1) if the appellant has timely requested a reporter=s record;

(2) if, without the appellant=s fault, a significant exhibit or a significant portion of
the court reporter=s notes and records has been lost
or destroyed orBif the proceedings were
electronically recordedBa significant portion of the
recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter=s record, or the lost or destroyed
exhibit, is necessary to the appeal=s resolution; and








(4) if the lost, destroyed or inaudible portion of the reporter=s record cannot be replaced by
agreement of the parties, or the lost or destroyed exhibit cannot be replaced
either by agreement of the parties or with a copy determined by the trial court
to accurately duplicate with reasonable certainty the original exhibit.

Tex. R. App. P. 34.6(f).

There is no dispute that the record is inaccurate and that
appellant is not at fault.  It is also clear that the parties cannot agree on a
record.  Rule 34.6(f)(3) specifies that a new trial may be granted only if the
missing portion of the record is necessary to the appeal=s resolution.  AThat provision is
itself a harm analysis.@  Issac v. State, 989 S.W.2d 754,
757 (Tex. Crim. App. 1999).  If the missing portion of the record is not
necessary to the appeal=s resolution, then the loss of that
portion of the record is harmless under the rule and a new trial is not
required.  Id.  

At the hearing ordered by this court, the court reporter
stated that she had taken the third day of trial and filed the final volume of
the reporter=s record.  She admitted to the court that she had
difficulty transcribing the testimony because her tape recorder malfunctioned. 
The court reporter also admitted that her stenographic notes contained
mis-strokes and Asome drops@ that could not be
reconstructed without the audiotape of the testimony.  In answer to the court=s questions as to
why she could not prepare an accurate record without the audiotapes, the
reporter answered that the Atranscript was of technical difficulty
that was a little bit hard to take down.  And I think it was a little bit more
difficult to take this certain expert down.@  

A.      Significant
Portions of the Record Have Been Lost or Destroyed.

Appellant contends that the inaccuracies in the record lead
to the inevitable conclusion that portions of the testimony are missing. 
Appellant points to the following portions of Dr. Barlow=s testimony in
which there are obvious gaps:

Q.  You=ve testified that if a surgeon were
to want to see a monitor, a blood pressure monitor B let me back up a moment.  Let me
ask you about consultation in general.  Tell me again when you seek a
consultation.  Is it strictly to get further testing?








A.  Testing is one of the things.  That=s an anesthesiologist B I can=t do B that is an area where I would ask
for a consult to give me help in that area.  Yes, that would be one reason.

* * * * *

Q.  Now, which is true?  Is it B now, which is true, deep sleep --

 

A.  Deep sleep B by the definition you can be
asleep and have your body functions going along and still be aroused, maybe. 
But sometimes in anesthesia sleep, assuming that you=re going to wake up B 

 

Q.  Excuse me for my ignorance, but if it is, in fact, a greater risk
of stroke B Dr. Rodriguez= deep sleep is typical of people
with hypertension, people with diabetes, if that is the case, wouldn=t it be B it=s indicated to put an end to the surgery until his
conditions were under control?

* * * * *

Q.  Depending on the natural course of events, if the cause is
prolonged blood pressure, if that is the condition, it moves through the body
and ends in a piece of plaque or some sort of clot being B 

 

A.  Just on changing blood pressure.  That is, nothing being moved at
the site of the body if B 

 

Q.  Forgive me, there is a direct relationship between prolonged and B you told me that prolonged can
cause a stroke?

 

* * * * *

Q.  General anesthetic as a particular parameter for the blood pressure
B 

 

A.  He doesn=t mind keeping the blood pressure B he is thinking about where he
would like to keep blood pressures during the cases, looking at those when he
is doing anesthetic.

 

Appellant
further points to several instances during closing argument where significant
portions of the record clearly appear to have been omitted.








Appellees contend that appellant has not met his burden to
show any significant portion of the record=s having been lost
or destroyed.  The court reporter admitted that there were mis-strokes and Adrops@ in her notes and
that she could not re-create the testimony without an audiotape.  Because the
court reporter delayed at least one year in preparing the record, neither she,
nor the parties, could state with certainty that the testimony of Dr. Barlow
was complete.  The disjointed nature of the recorded testimony, coupled with
the court reporter=s admission that her notes were not
complete, leads to the inevitable conclusion that portions of the reporter=s record are
missing.  Appellant could not reasonably be expected to show exactly what
testimony is missing.  See Owens-Illinois, Inc. v. Chatham, 899 S.W.2d
722, 735 (Tex. App.CHouston [14th Dist.] 1995, writ dism=d) (AIt would be like
asking someone to read War and Peace and, months later, showing the
individual several retyped pages from the middle of the book and asking them to
determine whether there were any changes on any of the pages.@). 

B.      The Lost
or Destroyed Portions of the Record are Necessary to Resolution of the Appeal.

Appellees further contend that appellant has failed to show
that the lost or inaudible portions of the record would convince the reviewing
court that the jury=s verdict is against the great weight and
preponderance of the evidence.  The question, however, is not whether this
court can be convinced by the missing testimony to reverse the trial court=s judgment, but
whether that testimony is necessary to the resolution of the appeal.








In complaints about factual insufficiency of the evidence,
the appellant=s burden cannot be discharged in the absence of a
complete or an agreed reporter=s record.  Englander Co. v. Kennedy,
428 S.W.2d 806, 807 (Tex. 1968).  The Aappeal=s resolution@ encompasses both
affirmance and reversal of the trial court=s judgment. 
Without a complete record, it is impossible to review all the evidence
presented to the jury or to apply the appropriate evidentiary sufficiency
standard of review.  In reviewing a factual sufficiency point, the court of
appeals must weigh all of the evidence in the record.  Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996).  Such a review necessarily includes evidence
that is favorable to the jury=s verdict.  Id.  Therefore, even if
we were willing to presume that all of Dr. Barlow=s testimony would
have supported the jury=s verdict, we are still obligated to
review it.  Without a complete, accurate reporter=s record, we
cannot do so.  Such a review is fundamentally necessary to the resolution of
the appeal.

Appellees rely on Yates v. State, 1 S.W.3d 277 (Tex.
App.CFort Worth 1999,
pet. denied), in which the Fort Worth Court of Appeals found that a missing
exhibit was not necessary to a factual sufficiency review.  In Yates,
the defendant was accused of driving while intoxicated and a videotape taken
following his arrest was introduced into evidence, but was lost before it
reached the appellate court.  Id. at 278.  In applying Rule 34.6(f)(3),
the court found the missing videotape was not necessary to resolution of the
appeal because the video was taken a relatively long time after the appellant=s arrest, and the
State conceded at trial that appellant did not appear intoxicated in the
video.  Id. at 279.  Yates is distinguishable from this case in
that here we do not have the benefit of knowing what portions of the record are
missing.  The trial court corrected twelve errors in the record, but the record
reflects that the final volume of the reporter=s record is not
complete.  Unlike the court in Yates, we cannot say with certainty that
the missing testimony is not necessary to the resolution of the appeal.

C.      Untimely
Request of the Record Does Not Preclude Reversal.








Appellee further contends that appellant is not entitled to
a new trial because he failed to timely request the record.  Appellant admits
that he did not request the record until one week after the deadline.  However,
even if appellant had
filed a written request on the first day he was obligated to do so, such a request
would not have prevented the inaccuracies in the record and the loss of a
portion of the testimony.  The court reporter admitted that she delayed in
preparing the record because she did not have an audiotape of the proceedings
and attempted to obtain the exhibits to aid in her preparation of the record. 
To hold appellant responsible for failing to request a reporter=s record when, by all indications,
such a request would not have prevented the loss of testimony is to elevate
form over substance.  See In re G.M.S., 991 S.W.2d 923, 925 (Tex. App.CFort Worth 1999,
pet. denied) (excusing late request of reporter=s record when
timely request would not have prevented loss of record).

IV.  Conclusion

We find a significant portion of the record, which is
necessary to the appeal=s resolution, has been lost through no
fault of appellant.  Accordingly, we reverse the judgment of the trial court
and remand for a new trial.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment rendered
and Opinion filed May 3, 2007.

Panel consists of
Chief Justice Hedges and Justices Hudson and Guzman.